IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **STREAM TV NETWORKS, INC.**, et al, <br><br> Plaintiffs, <br><br> *v.* <br><br> **SHADRON L STASTNEY,** et al., <br><br> Defendants. | MISCELLANEOUS ACTION <br><br> NO. 23-mc-135-KSM |

<u>MEMORANDUM</u>

Marston, J.                                                                                           November 16, 2023

      In March 2023, Stream TV Networks ("Stream") and Technovative Media, Inc. ("Technovative"), together, "Plaintiffs," filed a voluntary Chapter 11 bankruptcy petition in the Eastern District of Pennsylvania Bankruptcy Court. Chapter 11 Voluntary Pet. for Non-Individual (Doc. No. 1), *Stream TV Networks, Inc. & Technovative Media, Inc.*, Bky. No. 23-10763 (MDC) (Bankr. E.D. Pa. Mar. 15, 2023). This bankruptcy action is one of many legal proceedings that have been filed since 2019 over Stream and its assets. Judgment (Doc. No. 30-1) at 2, *Rajan v. Crawford*, No. 22-1719 (3d Cir. Nov. 3, 2022). Approximately five months after Plaintiffs filed their Chapter 11 petition, Plaintiffs initiated an adversary proceeding in Bankruptcy Court for the Eastern District of Pennsylvania against Defendants Shadron L. Statsney, SLS Holdings VI, LLC ("SLS"), Hawk Investment Holdings Limited ("Hawk"), Arthur Leonard Robert Morton, SeeCubic, Inc., Alastair Crawford, Krzystof Kabacinski, Kevin Gollop, Asaf Gola, John Doe(s), Jane Doe(s), law firms representing and acting in concert with John and Jane Doe(s), investment banks employed by the Debtors, Patric Theune, and SeeCubic B.V. ("Defendants") (the "Adversary Proceeding"). Original Compl. (Doc. No. 335), *Stream TV Networks, Inc. and Technovative Media, Inc.*, Bky. No. 23-10763 (MDC) (Bankr. E.D. Pa. Aug.

1

12, 2023). Plaintiffs' Adversary Proceeding complaint alleges nineteen causes of action.[1] *Id.*

On September 1, 2023, Plaintiffs filed a motion with this Court for withdrawal of the bankruptcy reference in the Adversary Proceeding, pursuant to 28 U.S.C. § 157(d) and Federal Rule of Bankruptcy Procedure 5011(a). (Doc. No. 1.) For the reasons that follow, Plaintiffs' motion is denied.

I. **Background**

Stream is a Delaware corporation founded in 2009 to develop and commercialize technology that enables viewers to watch three-dimensional content without 3D glasses.[2] *Stream TV Networks, Inc. v. SeeCubic, Inc.*, 279 A.3d 323, 326 (Del. Sup. Ct. 2022). However, by 2020, Stream remained a "pre-revenue, development-stage company," (*id.*), with "serious debts pushing it toward insolvency." Judgment, (Doc. No. 30-1) at 2, *Rajan v. Crawford*, No. 22-1719 (3d Cir. Nov. 3, 2022).

Stream was controlled by two brothers, Mathu Rajan and Raja Rajan and their family through a majority of the Class B common stock and a majority at the board level. *Stream*, 279 A.3d at 326; *Stream TV Networks, Inc. v. SeeCubic, Inc.*, 250 A.3d 1016, 1022 (Del. Ch. 2020).

---

[1] The Adversary Proceeding complaint include claims for: injunctive relief, exemplary damages, disallowance of claims pursuant to 11 U.S.C. § 502(d), breach of contract, negligence, tortious interference with existing and prospective economic advantage, recharacterization of loan as equity interest, fraudulent conveyance, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, determination of secured status and the extent priority of liens and interests under 11 U.S.C. § 506(a), right to set off under 11 U.S.C. § 558, equitable disallowance, objection to claim, misappropriation of trade secrets under 18 U.S.C. 1832(A)(1) and under PA Const. Stat. Ann. §§ 5301-08, and lender liability. Original Compl. (Doc. No. 335), *Stream TV Networks, Inc. and Technovative Media, Inc.*, Bky. No. 23-10763 (MDC) (Bankr. E.D. Pa. Aug. 12, 2023).

[2] Because a number of other courts have addressed the background of the contentious litigation involving Stream in great detail, this Court only provides a broad overview of the facts and procedural history. *See, e.g.*, Judgment, (Doc. No. 30-1), *Rajan v. Crawford*, No. 22-1719 (3d Cir. Nov. 3, 2022); Mem. Op. (Doc. No. 35), *Rajan v. Crawford*, No. 21-1456 (E.D. Pa. Feb. 16, 2022); *Stream TV Networks, Inc. v. SeeCubic, Inc.*, 279 A.3d 323 (Del. Sup. Ct. 2022); *Stream TV Networks, Inc. v. SeeCubic, Inc.*, 250 A.3d 1016 (Del. Ch. 2020).

Since 2009, Stream raised approximately $160 million from third party investors in the form of debt and equity. *Stream*, 250 A.3d at 1023. Stream pledged all of its assets, and the assets of its wholly-owned subsidiaries, as security for a series of secured notes owned by its senior secured creditor, SLS, and its junior secured creditor, Hawk. *Stream*, 279 A.3d at 326. Stream also executed a security agreement authorizing these creditors to take control of Stream's assets if these notes defaulted. *Id.*

In 2019, Alistair Crawford, a significant Stream stockholder, engaged in discussions with the Rajan brothers, SLS, and Hawk to restructure Stream. *Stream*, 250 A.3d at 1023. However, the Rajan brothers rejected the restructuring, and the discussions broke down. *Id.* at 1024. By February 2020, Stream defaulted on the secured notes, had more than $16 million in trade debt, was months behind on payments to customers and suppliers, and had missed its payroll at least once. *Id.*

In January 2020, Crawford and other Stream equity investors sued the Rajan family in Delaware Chancery Court, "alleging, among other things, fraudulent inducement to invest in Stream." Judgment, (Doc. No. 30-1) at 2, *Rajan v. Crawford*, No. 22-1719 (3d Cir. Nov. 3, 2022) (citing *Crawford v. Rajan*, No. 2020-0004-JTL (Del. Ch. Jan. 3, 2020)). After filing the suit, investors and creditors continued their efforts to restructure Stream and urged the Rajan brothers to appoint outside directors. *Id.*; *Stream*, 279 A.3d at 327. On March 12, 2020, three days after SLS notified Stream that it was in default, the Rajan brothers appointed four independent outside directors. *Stream*, 279 A.3d at 327. On March 23, 2020, SLS filed a complaint in Delaware Superior Court against Stream seeking foreclosure and other relief. Verified Compl. (Doc. No. 1), *SLS Holdings VI, LLC v. Stream TV Networks, Inc*. (Del. Sup. Mar. 24, 2020).

Subsequently, in May 2020 a new committee consisting of two independent directors approved an Omnibus Agreement between Stream and its secured creditors, including SLS. Judgment, (Doc. No. 30-1) at 3, *Rajan v. Crawford*, No. 22-1719 (3d Cir. Nov. 3, 2022). Under the Omnibus Agreement, the investors and creditors formed a new entity, SeeCubic, to receive Stream's assets in satisfaction of any outstanding debt. *Id.* The Rajan family does not have a controlling ownership stake in SeeCubic. *Id.*

In addition to the two cases discussed above suing Stream in the Delaware Chancery Court[3] and Delaware Superior Court,[4] the creation of SeeCubic resulted in even more contentious litigation in various jurisdictions. A brief summary of these lawsuits is outlined below:

- In May 2020, one of the Rajan brothers sued certain Stream stockholders, secured creditors, and independent board directors in the Court of Common Pleas for Philadelphia County alleging, among other things, tortious interference with contract and civil conspiracy. *See* Mem. Op. (Doc. No. 35) at 4, *Rajan v. Crawford*, No. 21-1456 (E.D. Pa. Feb. 16, 2022). In March 2021, the lawsuit was removed to this District. *See* Notice of Removal (Doc. No. 1), *Rajan v. Crawford*, No. 21-1456 (E.D. Pa. Mar. 26, 2021). The case is currently stayed pending final resolution of two additional pending cases: (1) *Crawford v. Rajan*, No. 2020-0004-JTL (Del. Ch.)) and (2) *Hawk Inv. Holdings Ltd. v. Stream TV Networks, Inc.*, No. 2022-0930-JTL (Del. Ch.). Order (Doc. No. 57), *Rajan v. Crawford*, No. 21-1456 (E.D. Pa. Jan. 11, 2023). The first case is discussed above, and the second case is described at the conclusion of this summary of litigation.

- In September 2020, Stream sued SeeCubic in Delaware Chancery Court, seeking an injunction to block enforcement of the Omnibus Agreement ("Delaware Chancery Action"). *Stream TV Networks, Inc. v. Seecubic, Inc.*, 2020-0766-JTL

---

[3] The lawsuit brought by Crawford and other Stream equity investors has been stayed pending the outcome of Stream's lawsuit against SeeCubic in the Delaware Chancery Court. Case Management Order (Doc. No. 87), *Crawford v. Rajan*, No. 2020-0004-JTL (Del. Ch. May 20, 2021).

[4] SLS's lawsuit against Stream seeking foreclosure and other relief initially was stayed pending the outcome of Stream's involuntary chapter 7 bankruptcy petition in the District of Delaware Bankruptcy Court. Notice of Suggestion of Involuntary Chapter 7 bankruptcy and Automatic Stay of Proceedings (Doc. No. 56), *SLS Holdings VI, LLC v. Stream TV Networks, Inc.* (Del. Sup. May 24, 2021). Then, in February 2023, SLS requested that the court maintain the stay of proceedings in light of the *Hawk Inv. Holdings Ltd. v. Stream TV Networks, Inc.* (No. 2022-0930-JTL (Del. Ch.) action.

(Del. Ch.). The Chancery Court granted SeeCubic's motion for a permanent injunction, holding that the Omnibus Agreement was valid and binding, but the Delaware Supreme Court vacated the permanent injunction in 2022, remanding to the Chancery Court for further proceedings. *See generally*, *Stream*, 279 A.3d 323. These proceedings are stayed pending the resolution of Stream's voluntary petition for Chapter 11 bankruptcy in the Eastern District of Pennsylvania. *See* Suggestion of Bankruptcy and Notice of Automatic Stay (Doc. No. 629), *Stream TV Networks, Inc. v. Seecubic, Inc.*, 2020-0766-JTL (Del. Ch. Mar. 16, 2023).

- In February 2021, Stream filed a voluntary Chapter 11 bankruptcy petition in the District of Delaware Bankruptcy Court (*Stream TV Networks, Inc.*, Bky. No. 21-10433-KBO (Bankr. D. Del. Feb. 24, 2021)). This bankruptcy petition was dismissed in May 2021 because Stream failed to show that the bankruptcy was filed in good faith and for a legitimate bankruptcy purpose.[5] *See* Hr'g Tr. (Doc. No. 200) *and* Order Dismissing Debtors Chapter 11 Case (Doc. No. 198), *Stream TV Networks, Inc.*, Bky. No. 21-10433-KBO (Bankr. D. Del. May 17, 2021), *aff'd* Final Order by District Court Judge Richard G. Andrews (Doc. No. 210), *Stream TV Networks, Inc.*, Bky. No. 21-10433-KBO (Bankr. D. Del. Dec. 16, 2021).

- In May 2021, three of Stream's unsecured creditors filed an involuntary chapter 7 bankruptcy petition on Stream's behalf. *In re Stream TV Networks, Inc.*, Bky. No. 21-10848-KBO (Bankr. D. Del. May 23, 2021). In June 2021, this bankruptcy petition was also dismissed as an improper attempt to circumvent the previous bankruptcy dismissal order,[6] and the parties' stipulated to dismiss the appeal of the dismissal order. *See* Order Granting Emergency Motion of SeeCubic, Inc. and SLS Holdings VI, LLC for an Order Dismissing Involuntary Chapter 7 Case (Doc. No. 36), *In re Stream TV Networks, Inc.*, Bky. No. 21-10848-KBO (Bankr. D. Del. June 10, 2021); Stipulation of Dismissal (Doc. No. 64), *In re Stream TV Networks, Inc.*, Bky. No. 21-10848-KBO (Bankr. D. Del. Dec. 7, 2021).

---

[5] In her ruling, Judge Owens stated, "[The bankruptcy petition] was designed to stop SeeCubic and the debtor's secured creditors from fully implementing the omnibus agreement, to unravel it and to avoid the Chancery Court's order, and very likely, a mandatory injunction. I will not permit the bankruptcy process to be used in such a fashion." Hr'g Tr. at 19:12–18 (Doc. No. 200), *Stream TV Networks, Inc.*, Bky. No. 21-10433-KBO (Bankr. D. Del. May 17, 2021).

[6] Judge Owens stated in her ruling, "[I]t's clear to me that this proceeding was filed as another attempt by the parties to circumvent my dismissal order, gain some sort of litigation leverage over the secured lenders and the disputes in the Chancery Court, and essentially get another bite of the appl[e] to try and pursue the previously submitted plan and theories that are already considered and rejected in the prior Chapter 11 proceeding." Hr'g Tr. on Emergency Motion to Dismiss at 63:24–64:6 (Doc. No. 37), *In re Stream TV Networks, Inc.*, Bky. No. 21-10848-KBO (Bankr. D. Del. June 10, 2021).

- In June 2022, Stream sued largely the same group of defendants as those identified in the instant Adversary Proceeding, including certain secured creditors and independent board directors, in the District of Delaware. Compl. (Doc. No. 6), *Stream TV Networks, Inc. v. Stastney*, No. 22-cv-00851-CJB (D. Del. June 24, 2022). Stream also alleged similar causes of action, including breach of fiduciary duty, civil conspiracy, and tortious interference with prospective economic advantage. *Id.* This case is stayed pending the resolution of Stream's voluntary petition for Chapter 11 bankruptcy in the Eastern District of Pennsylvania. *See* Oral Order (Doc. No. 83), *Stream TV Networks, Inc. v. Stastney*, No. 22-cv-00851-CJB (D. Del. Sept. 19, 2022).

- In October 2022, Hawk sued Stream in Delaware Chancery Court alleging a violation of 8 Del. C. § 225 — a Delaware statute designed to resolve disputes over the makeup of corporate boards ("Hawk Delaware state law action"). Complaint (Doc. No. 1), *Hawk Inv. Holdings Ltd. v. Stream TV Networks, Inc.*, No. 2022-0930-JTL (Del. Ch. Oct. 17, 2022). In March 2023, Stream filed a suggestion of bankruptcy and notice of automatic stay pending Stream's voluntary Chapter 11 petition for bankruptcy in the Eastern District of Pennsylvania. *See* Doc. No. 362, *Hawk Inv. Holdings Ltd. v. Stream TV Networks, Inc.*, No. 2022-0930-JTL (Del. Ch. Mar. 16, 2023).

- In March 2023, Stream again filed a voluntary Chapter 11 bankruptcy petition, this time in the Eastern District of Pennsylvania. *In re Stream TV Networks, Inc.*, Bky. No. 23-10763 (MDC) (Bankr. E.D. Pa. Mar. 15, 2023).[7] This bankruptcy petition is currently pending before Chief Judge Magdeline D. Coleman. Plaintiffs filed the Adversary Proceeding in this bankruptcy, and their motion to withdraw the reference to the Bankruptcy Court is the subject of this memorandum. (Doc. No. 1-3.)

## II.  Legal Standard

Federal district courts have "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." *See* 28 U.S.C. § 1334(b). A "district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." 28 U.S.C. § 157(a). The statute cited by Plaintiff as grounds

---

[7] In the most recent bankruptcy case in the Eastern District of Pennsylvania, Hawk has filed multiple substantive motions for relief, including an emergency motion for relief from stay ("Hawk substantive motions"). Emergency Motion for Relief from Stay (Doc. No. 16), *In re Stream TV Networks, Inc.*, Bky. No. 23-10763 (MDC) (Bankr. E.D. Pa. Mar. 20, 2023).

for withdrawal reads as follows:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d).

This suggests that there is a mechanism provided for both mandatory and permissive withdrawal. *In re Earth Pride Organics, LLC*, 602 B.R. 1, 12 (E.D. Pa. 2019). However, several courts have recognized that "'a literal application of the second sentence could have the unintended result of permitting the removal of most bankruptcy matters to the district court . . . . As a result, the provision has been read narrowly, so that withdrawal of the reference is mandatory only where resolution of the claims will require 'substantial and material' consideration of non-code federal *statutes* that have more than a de minimis impact on interstate commerce.'" *In re Forks Specialty Metals Inc.*, Misc. Action No. 19-132, 2020 WL 2098099, at *1 (E.D. Pa. May 1, 2020) (citing *Times Mirror Magazines, Inc. v. Las Vegas Sports News, L.L.C.*, No. 98-5768, 1999 WL 179749, at *2 n.2 (E.D. Pa. Mar. 17, 1999) (emphasis added)). Plaintiffs here do not argue that withdrawal of the reference is mandatory; rather, they seek permissive withdrawal of the reference to the Bankruptcy Court.[8] (Doc. No. 1.)

The "for cause shown" requirement to invoke permissive withdrawal is "designed to give

---

[8] The Court notes that withdrawal of the reference is not mandatory under the governing standard. Plaintiffs include only one claim that involves "consideration of . . . laws of the United States regulating organizations or activities affecting interstate commerce" which are not included under title 11. *See* 28 U.S.C. § 157(d); Original Compl. (Doc. No. 335), *Stream TV Networks, Inc. & Technovative Media, Inc.*, Bky. No. 23-10763 (MDC) (Bankr. E.D. Pa. Aug. 12, 2023). Because there is just one federal, non-title 11 claim among the nineteen claims in the Adversary Proceeding complaint, the Court finds that this matter does not involve "substantial and material" consideration of non-code federal statutes and thus mandatory withdrawal is not required.

district courts discretionary power to take cases out of the Bankruptcy Court and adjudicate them under certain circumstances." *Forks Specialty Metals*, 2020 WL 2098099, at *2 (quoting *In re Leitgeb*, No. 09-mc-23, 2009 WL 700187 (E.D. Pa. Mar. 10, 2009)). This requirement "creates a presumption that Congress intended to have bankruptcy proceedings adjudicated in bankruptcy court unless rebutted by a contravening policy." *Hatzel v. Buehler, Inc. v. Cent. Hudson Gas & Elec. Corp.*, 106 B.R. 367, 371 (D. Del. 1989) (internal quotations omitted). "To overcome the presumption, the moving party bears the burden of proving that cause exists to withdraw the reference." *Feldman v. ABN AMBRO Mortg. Grp., Inc.*, NO. 19-mc-131, 2020 WL 618604, at *2 (E.D. Pa. Feb. 10, 2020) (internal citations omitted). *See also Earth Pride Organics*, 602 B.R. at 12 ("The party seeking the withdrawal of the reference has the burden of going forward to show the grounds for withdrawal and bears the ultimate risk of non-persuasion.") (quotation marks omitted).

Generally, "cause" to withdraw the reference "will be present in only a narrow set of circumstances." *In re AgFeed USA, LLC*, 565 B.R. 556, 563 (D. Del. 2016) (quoting *In re Pruitt*, 910 F.2d 1160, 1171 (3d Cir. 1990)). "Several courts have found that 'only "truly exceptional and compelling circumstances" warrant a withdrawal of reference.'" *Forks Specialty Metals*, 2020 WL 2098099, at *2 (citing *Dura Auto. Sys., Inc. v. Johnson Elec. N. Am., Inc.*, No. 06-13990, 2007 WL 9752833, at *2 (E.D. Mich. Apr. 23, 2007); *In re Wash. Mfg. Co.*, 133 B.R. 113, 116 (M.D. Tenn. 1991) ("[T]he Court finds that the 'cause' standard in the non-mandatory withdrawal provision is a high one. Thus, only a compelling cause warrants withdrawal from the automatic reference to bankruptcy under the non-mandatory provision."); *In re Ponce Marine Farm, Inc.*, 172 B.R. 722, 725 n.2 (D.P.R. 1994) ("In order to insure (sic) that the exception does not swallow the rule, courts remain cautious in applying § 157(d). As such withdrawal, even

discretionary withdrawal is permitted in only a limited number of circumstances.")). The court in *Forks Specialty Metals* noted that "[s]ome courts also recognize that '[e]ven if cause exists, there is no mandate that the reference must be withdrawn.'" *Id.* (citing *Dura Auto.*, 2007 WL 9752833, at *2).

### III. Analysis

Plaintiffs argue that all of the pertinent factors overwhelmingly support a withdrawal of the reference. (Doc. No. 1-3.) Defendants disagree and argue that Plaintiffs' motion for withdrawal is yet another example of an undeniable pattern of forum shopping by Plaintiffs with the purpose of causing delay after delay to prevent the secured creditors from enforcing their rights. (*See generally* Doc. No. 6.)

This Court must consider a non-exhaustive list of five factors that the Third Circuit enumerated in *In re Pruitt* to determine whether cause exists to withdraw the reference. *Feldman*, 2020 WL 618604, at *3 (citing *In re Pruitt*, 910 F.2d at 1168). These factors include: "(1) promoting uniformity in bankruptcy administration; (2) reducing forum shopping and confusion; (3) fostering the economical use of the debtors' and creditors' resources; (4) expediting the bankruptcy process; and (5) [accounting for] the timing of the request for withdrawal." *Id.*

Additionally, this Court considers two supplemental factors: (1) whether the parties have requested a jury trial, which may be held in the Bankruptcy Court only with the parties' consent, 28 U.S.C. § 157(e), and (2) whether the action sought to be withdrawn is a "core" or "non-core" proceeding.[9] *Feldman*, 2020 WL 618604, at *3; *see* 28 U.S.C. § 157(b)(1). As to the request for

---

[9] In general, a "core" claim involves all proceedings integral to the restructuring of debtor-creditor rights under title 11 of the United States Code, whereas "non-core" claims do not involve causes of action created by title 11. *Windsor Commcn's Grp., Inc. v. Grant*, 75 B.R. 713, 721 (E.D. Pa. 1985).

a jury trial, courts have noted that "assertion of a Seventh Amendment right to a jury trial, coupled with a refusal to consent to such trial before the Bankruptcy Court, is not of itself sufficient cause for discretionary withdrawal." *In re Am. Classic Voyages Co.*, 337 B.R. 509, 511 (D. Del. 2006).  And, as it to relates to core and non-core proceedings, "bankruptcy courts can hear both core and non-core proceedings, [but] the scope of their authority is different." *Feldman*, 2020 WL 618604, at *3 (citing *In re Am. Cap. Equip., LLC*, 325 B.R. 372, 375 (W.D. Pa. 2005)).  "For core matters, the bankruptcy court may issue final orders and judgments, whereas for non-core matters, the bankruptcy court must submit proposed findings of fact and conclusions of law to the district court for de novo review." *Id.* (citing 28 U.S.C. § 157(b)(1), (c)(1)).  The Court addresses these seven factors in turn below.

### A.  Promoting Uniformity in Bankruptcy Administration

The first *Pruitt* factor asks this Court to consider whether withdrawing reference would promote uniformity in bankruptcy administration.  *Pruitt*, 910 F.2d at 1168.  Plaintiffs maintain that withdrawing the reference to bankruptcy court would be in the interest of uniformity because a "predominance of the Plaintiffs' claims . . . implicate . . . non-bankruptcy related and state law issues." (Doc. No. 1-3 at 23.)  However, "[t]he fact that withdrawal would not require the [District] Court to dispose of bankruptcy law matters does not establish that withdrawal would promote uniformity in bankruptcy administration.  At best, this assertion suggests that withdrawal would not *disrupt* the uniformity of bankruptcy administration, but that argument could be advanced about all non-core proceedings, which, by definition, neither 'arise under title 11' nor 'aris[e] in a case under title 11.'" *Seitz v. Rothermel*, 638 B.R. 846, 851 (E.D. Pa. 2022) (emphasis in original) (citing 28 U.S.C. ¶ 157(b)(1), (3)).  Thus, this factor does not support withdrawal of the reference.

**B. Reducing Forum Shopping and Confusion**

The second factor asks whether withdrawing reference would reduce forum shopping and confusion. *Pruitt*, 910 F.2d at 1168. Plaintiffs argue that they seek withdrawal "not because they seek a more friendly forum, but because the requested jury trial . . . can occur only in District Court." (Doc. No. 1-3 at 23.) Plaintiffs also suggest that their motivation is "fundamentally . . . on jurisdictional grounds." *Id.* at 24. But, as discussed below, the request for a jury trial does not weigh in favor of withdrawal of the reference. Since Plaintiffs offer no other explanation as to why the bankruptcy court would be ill-equipped to consider Plaintiffs' claims, this factor weighs against withdrawal.

Moreover, this Court has no special knowledge of the facts at issue in the Adversary Proceeding. By contrast, the bankruptcy judge, Chief Judge Coleman, has managed Stream's bankruptcy case for the better part of a year and has conducted multiple hearings and a trial in this matter. Since Chief Judge Coleman has already conducted such proceedings, withdrawing the reference before the Bankruptcy Court has the opportunity to make substantive determinations would be premature and improperly promote forum-shopping. *See Seitz*, 638 B.R. at 851 (noting that "[p]rematurely removing the case from the bankruptcy court would tend to encourage forum-shopping").

As Defendants argue, Plaintiffs' previous conduct in other related litigation illustrates a pattern of improper forum shopping. (Doc. No. 6 at 24.) For example, in the Delaware Chancery Action, when it appeared that the Delaware Chancery Court was prepared to enter summary judgment in favor of SeeCubic, Inc., Plaintiffs filed for bankruptcy in the District of Delaware to take advantage of the automatic stay triggered by filing for bankruptcy. *See* Stipulation and Scheduling Order Governing SeeCubic's Motion for Summary Judgment (Doc.

11

No. 219), *Stream TV Networks, Inc. v. SeeCubic, Inc.*, C.A. No. 2020-0766-JTL (Del. Ch. Dec. 31, 2020) (Plaintiffs' deadline to file reply brief to SeeCubic's motion for summary judgment was February 26, 2021); Chapter 11 Voluntary Petition (Doc. No. 1), *Stream TV Networks, Inc.*, Bky. No. 21-10433-KBO (Bankr. D. Del. Feb. 24, 2021) (Plaintiffs filed bankruptcy petition on February 24, 2021). Similarly, on the eve of trial of the Hawk Delaware state law action, when the Chancery Court was prepared to rule on the question of whether Hawk controlled Technovative, Stream filed another bankruptcy—this time in the Eastern District of Pennsylvania. *See* First Amended Stipulation and Order Governing Case Schedule (Doc. No. 338), *Hawk Inv. Holdings Ltd. v. Stream TV Networks, Inc.*, No. 2022-0930-JTL (Del. Ch. Mar. 8, 2023) (scheduling trial for March 23, 2023) and Suggestion of Bankruptcy and Notice of Automatic Stay (Doc. No. 362), *Hawk Inv. Holdings Ltd. v. Stream TV Networks, Inc.*, No. 2022-0930-JTL (Del. Ch. Mar. 16, 2023) (informing the Chancery Court that Plaintiffs filed a voluntary petition for bankruptcy in the Bankruptcy Court for the Eastern District of Pennsylvania on March 15, 2023). And now, as the Chief Judge Coleman is prepared to rule on Hawk's substantive motions after multiple days of in-person hearings, Plaintiffs have filed the instant motion. *See* Hearing on Motion (Doc. Nos. 252, 268–69, 272–73, 277–78), *In re Stream TV Networks, Inc.*, Bky. No. 23-10763 (MDC) (Bankr. E.D. Pa. Mar. 15, 2023).

This pattern of conduct suggests that Plaintiffs' motion to withdraw the reference is yet another improper attempt to delay and forum shop. Taking this into consideration along with Plaintiffs' failure to offer any other explanation why the Bankruptcy Court would be ill-equipped to consider Plaintiffs' claims (besides the right to a jury trial), the Court finds this factor weighs against withdrawal of the reference.

### C. Fostering the Economical Use of the Parties' Resources

The third *Pruitt* factor asks the Court to consider the most economic use of the parties' resources. *Pruitt*, 910 F.2d at 1168. Plaintiffs urge that this factor strongly favors withdrawal because the "operative facts underlying the core claims are inexorably bound up and intertwined with the non-core claims." (Doc. No. 1-3 at 22.) They suggest that because the district court will have to review any decisions by the Bankruptcy Court *de novo*, denying the motion to withdraw the reference will exacerbate any undue delay and expense. (*Id.*) However, a review of the Bankruptcy Court docket reveals that it has already expended substantial time and effort in this case. *See* Docket, *Stream TV Networks, Inc. & Technovative Media, Inc.*, Bky. No. 23-10763 (MDC) (Bankr. E.D. Pa.). As noted above, the Bankruptcy Court has already held numerous hearings and a trial in this matter. And this Court has "no doubt that the Bankruptcy Court has developed an impressive command of the factual background and legal issues presented in the underlying action." *400 Walnut Assocs., L.P. v. 4th Walnut Assocs., L.P.*, No. 14-MC-145, 2015 WL 390455, at *3 (E.D. Pa. Jan. 28, 2015). Thus, this factor weighs against withdrawing the reference because doing so "would be a waste of the Bankruptcy Court's familiarity with the underlying facts and legal issues." *Id.* at *4. Even though the Court may ultimately have to review and approve this opinion, utilizing the Bankruptcy Court's familiarity with the case in the first instance will promote judicial economy. *See In re Big v. Holding Corp.*, No. 00–04372(RTL), 2002 WL 1482392, at *4 (D. Del. July 11, 2002) ("[T]he Bankruptcy Court has already expended invaluable time and energy familiarizing itself with the facts and issues surrounding the [adversary proceeding]. Considerations of judicial economy thus weigh in favor of leaving the case with the Bankruptcy Court."); *Nw. Inst. of Psychiatry, Inc. v. Travelers Indem. Co.*, 272 B.R. 104, 109 (E.D. Pa. 2001) ("The bankruptcy court is familiar with the parties, the factual background of the case and the legal issues involved. Therefore, this court

13

finds no reason to disturb the present course and it declines to withdraw the reference as judicial economy will be served by allowing the adversary action to remain in bankruptcy court.").

### D. Expediting the Bankruptcy Process

Plaintiffs fail to address the fourth *Pruitt* factor, which asks whether withdrawing the reference would expedite the bankruptcy process. And, even if Plaintiffs offered an argument as to this factor, the Court finds that the Bankruptcy Court's familiarity with this case weighs against granting the withdrawal of the reference. As Defendants correctly note, "[t]he Bankruptcy Court has presided over the [this matter] for more than six months, (i) issuing decisions on motions, (ii) addressing discovery disputes, (iii) observing testimony from key witnesses, and (iv) is in the middle of considering two significant motions (one of which may be dispositive)." (Doc. No. 6 at 25.) The Bankruptcy Court's familiarity with this case and its complicated procedural past, which includes two prior bankruptcy actions in Delaware, supports allowing this Adversary Proceeding to continue as part of the pending bankruptcy action. Thus, this factor also weighs against the withdrawal.

### E. Timing the Request for Withdrawal

With respect to the fifth *Pruitt* factor, which considers the timing of the withdrawal request, Plaintiffs state that they have moved to withdraw the reference in a timely fashion and that they have not moved based on an effort to stall litigation or conjure procedural delay. (Doc. No. 1-3 at 24.) "A § 157(d) motion is timely if it is filed at the first reasonable opportunity after the movant has notice of the grounds for removal, taking into consideration the circumstances of the proceeding." *In re Schlein*, 188 B.R. 13, 14 (E.D. Pa. 1995). Timeliness is "measured by the stage of the proceedings in the Bankruptcy Court." *In re U.S.A. Floral Prods., Inc.*, Civ. A. No. 05-00039, 2005 WL 3657096, at *1 (D. Del. July 1, 2005) (internal quotation marks omitted).

14

"The purpose of the timeliness provision is to prevent unnecessary delay and stalling tactics." *Schlein*, 188 B.R. at 15.

Plaintiffs argue that their motion is timely because they moved to withdraw the reference eighteen days after filing the Adversary Proceeding complaint.[10] But Defendants argue Plaintiffs have had a number of other opportunities to file the claims brought in this complaint and in fact have done so in prior litigation. (Doc. No. 6 at 26–27.) Defendants urge the Court to consider whether Plaintiffs have an improper motive for filing the complaint and moving to withdraw the reference. (*Id.*) The Court agrees with Defendants. The instant Adversary Proceeding complaint parrots a myriad of other lawsuits Plaintiffs have filed in other courts, including in this district. *Compare* Amended Compl. (Doc. No. 8), *Rajan v. Crawford*, No. 21-1456 (E.D. Pa. Apr. 15, 2021) *with* Original Compl. (Doc. No. 335), *Stream TV Networks, Inc. & Technovative Media, Inc.*, Bky. No. 23-10763 (MDC) (Bankr. E.D. Pa. Aug. 12, 2023). Plaintiffs' filing of the Adversary Proceeding complaint appears to be yet another attempt by Plaintiffs to delay and stall litigation that may not be resolved in their favor.[11] Given Plaintiffs' history of litigation-stalling tactics, *see supra* at 12–13, the Court concludes that this factor weighs against withdrawal.

### F. Party's Request for a Jury Trial

Next, the Court turns to the first supplemental factor and considers whether the parties have requested a jury trial, which may be held in the Bankruptcy Court only with the parties'

---

[10] Plaintiffs filed the complaint in the Adversary Proceeding on August 12, 2023 and moved to withdraw the reference to the Bankruptcy Court on August 30, 2023.

[11] As Defendants note, the Hawk substantive motions in Bankruptcy Court are nearing completion, "and the resolution of those motions may have a significant impact on the Adversary Proceeding. . . . [I]f the Bankruptcy Court dismisses the case, this could impact whether and where the Adversary Proceeding's claims are adjudicated." (Doc. No. 6 at 26–27.)

15

consent. *Feldman*, 2020 WL 618604, at *3; 28 U.S.C. § 157(e). As mentioned above in connection with the second *Pruitt* factor, Plaintiffs rely heavily on their Seventh Amendment right to a jury trial in support of their motion. (Doc. No. 1-3 at 20.) Plaintiffs argue that "it is abundantly clear that the [Bankruptcy] Court's authority to conduct a jury trial is virtually non-existent." (*Id.*) But the Bankruptcy Court may conduct a jury trial if specially designated to exercise such jurisdiction by the district court and with the express consent of all the parties. 28 U.S.C. § 157(e); *In re 5171 Campbells Land Co.*, Civil Action No. 1:21-cv-216, 2022 WL 267357, at *3 (W.D. Pa. Jan. 28, 2022). Although Plaintiffs recognize this rule, they suggest that consent will not be given by the parties if this Court were to designate such authority to the Bankruptcy Court. (Doc. No. 1-3 at 20.)

As noted earlier, Plaintiffs' demand for a jury trial does not alone overcome the presumption that reference should not be withdrawn:

> As a general matter, . . . sufficient "cause" for discretionary withdrawal is not established by the mere fact that the movant demands a jury trial and has not consented to trial in the bankruptcy court. "That a district court will ultimately preside over the jury trial is insufficient to demonstrate cause because there is no reason why the Bankruptcy Court may not preside over [the] [A]dversary [P]roceeding and adjudicate discovery disputes and motions only until such time as the case is ready for trial."

*5171 Campbells Land Co.*, 2022 WL 267357, at *3 (citing *In re Princeton Alt. Income Fund, LP*, Civil Action No. 1809894, 2018 WL 4854639, at *1 (D.N.J. Oct. 4, 2018)); *see also Feldman v. ABN AMRO Mortg. Grp. Inc.*, 515 B.R. 443, 453 (E.D. Pa. 2014) ("[T]he bankruptcy court may preside over pretrial matters, including dispositive motions that (by way of Report and Recommendation) could obviate the need for a jury trial altogether. Consequently, we do not agree with the Trustee that the prospect of a jury trial at some later date mandates immediate withdrawal."). Thus, this consideration does not weigh in favor of withdrawing the reference at

this time.

### G.  Core or Non-Core Proceeding

Last, courts rely heavily on whether an adversary proceeding alleges "core" or "non-core" claims in determining whether to withdraw a reference.  *In re BlockFi Inc.*, Civil Action No. 23-3015 (MBK), 2023 WL 6148151, at *4 (D.N.J. Sept. 20, 2023).  "In general, 'core' proceedings include all proceedings integral to the restructuring of debtor-creditor rights, whether or not they involve questions of state law, and all proceedings in which the right to relief is created by title 11 of the United States Code."  *Windsor Commcn's*, 75 B.R. at 721.  "All proceedings which are not integral to the restructuring of debtor-creditor rights and do not involve a cause of action created by title 11 fall into the residual category of 'non-core' proceedings."  *Id.*

However, it is "well settled" that proceedings should "not be withdrawn for the sole reason that they are non-core."  *Feldman*, 2020 WL 618604, at *5.  A bankruptcy judge "may hear a proceeding that is not a core proceeding but that is otherwise related to the case under title 11."  *Princeton Alt. Income Fund*, 2018 WL 4854639, at *1 (cleaned up).  "In a non-core proceeding, however, the bankruptcy court must submit proposed findings of fact and conclusions of law to the district court for *de novo* review and entry of final judgment."  *5171 Campbells Land Co.*, 2022 WL 267357, at *3 (citing *Princeton Alt. Income Fund*, 2018 WL 4854639, at *1).

Defendants concede that this case involves several non-core claims.  (Doc. No. 6 at 29.)  However, Defendants emphasize that of the nineteen causes of action,[12] only seven are non-core

---

[12] Defendants argue that although Plaintiffs' Adversary Proceeding complaint includes nineteen claims, three of these claims are remedies rather than causes of action (Count II (injunctive relief), Count XVI (exemplary damages), and Count XIX (lender liability)).  (Doc. No. 6 at 28.)  However, this Court need not determine whether these claims are remedies or causes of action.

claims.[13]  (*Id.*)  While Plaintiffs' Adversary Proceeding complaint involves non-core claims, which would favor withdrawal, the motion "should not be granted for this reason alone. Otherwise, no non-core matter would ever be referred to the bankruptcy courts." *Seitz*, 638 B.R. at 852 (internal citation omitted).  "[T]he possibility that the parties may be required to litigate the matter twice, once before the Bankruptcy Court and once before the District Court on appeal, does not necessarily mean it is a more efficient use of the parties' resources to simply have the District Court decide a core proceeding every time, as this would frustrate the purpose of the reference to the Bankruptcy Court." *In re GEO Specialty Chems., Inc.*, Civ. A. Nos. 16-8405, 8463, 2017 WL 66387, at *4 (D.N.J. Jan. 5, 2017); *see also 400 Walnut Assocs.*, 2015 WL 390455, at *4 ("[W]ithdrawing the reference here would not effectively prevent an unnecessary duplication of effort . . . but rather would be a waste of the Bankruptcy Court's familiarity with the underlying facts and legal issues.").

This Court has no reason "to believe that the Bankruptcy Court is less capable of presiding over the Adversarial Proceeding because of the inherent nature of its docket.  Indeed, it is well within the ken of bankruptcy courts to preside over complex and protracted proceedings." *5171 Campbells Land Co.*, 2022 WL 267357, at *4.  In fact, here there is reason to believe that the Bankruptcy Court is *more* capable addressing all the claims set forth in Plaintiffs' Adversary Proceeding complaint given the past litigation, which includes two prior bankruptcy actions.  To

---

[13] Plaintiffs fail to provide any citations to caselaw to support their assertions as to which of the nineteen claims constitute core or non-core claims.  On the other hand, Defendants assert that Counts V (breach of contract), VI (negligence), VII (tortious interference with existing and prospective economic advantage), X (breach of fiduciary duty), XI (aiding and abetting breach of fiduciary duty), X[V]II (misappropriation of trade secrets, Defend Trade Secrets Act, 18 U.S.C. § 1832(A)(1)), and X[V]III (misappropriation of trade secrets, Pennsylvania Uniform Trade Secrets Act) are non-core claims, and that nearly all of them are improper attempts to relitigate issues already decided on the merits.  (Doc. No. 6 at 29.)  Given the Court's reasoning for declining to withdraw the reference, the Court need not reach which claims are core or non-core.

the extent this Court may eventually conduct a *de novo* review of any part of the Adversary Proceeding, this Court "will no doubt benefit from having the added perspective of the Bankruptcy Court." *Id*. at *5. Thus, the Court finds this factor weighs against the withdrawal.

IV. **Conclusion**

In sum, Plaintiffs' motion is denied because each of the five *Pruitt* factors and the two supplemental considerations weigh against the withdrawal of the reference. An appropriate order follows.